IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-00571-PAB

MARISELA ANDRADE DE ZARATE,

    Petitioner,

v.

JOHNNY CHOATE, in his official capacity as warden of the Aurora Contract Detention Facility,
ERNESTO SANTACRUZ, in his official capacity as Field Office Director, Denver, U.S. Immigration & Customs Enforcement,
ALEJANDRO MAYORKAS, in his official capacity as Secretary, U.S. Department of Homeland Security,
TAE D. JOHNSON, in his official capacity as Acting Director of Immigration & Customs Enforcement, and
MERRICK GARLAND, in his official capacity as Attorney General, U.S. Department of Justice,

    Respondents.

---

## ORDER

---

This matter comes before the Court on the Verified Petition for Writ of Habeas Corpus [Docket No. 1] and Petitioner's Motion for a Temporary Restraining Order [Docket No. 2], filed on March 2, 2023. Respondents filed a response to both the petition and the motion for a temporary restraining order on March 10, 2023, Docket No. 10, and petitioner replied on March 15, 2023. Docket No. 11. The Court has jurisdiction under 28 U.S.C. § 2241(c).

## I. BACKGROUND[1]

Petitioner Marisela Andrade de Zarate was born in Santiago Excuintla, Nayarit, Mexico. Docket No. 1 at 8, ¶ 25. Ms. Andrade came to the United States with her husband. *Id.* at 9, ¶ 27. As of March 2004, she was a lawful permanent resident of the United States. Docket No. 10-1 at 2, ¶ 5. On August 12, 2010, Ms. Andrade was convicted of first degree murder of her husband in Superior Court in Monterey County, California and, on September 14, 2010, she was sentenced to life imprisonment without parole. Docket No. 1 at 11, ¶ 36.

In 2018, Edmund Brown, governor of California, commuted Ms. Andrade's sentence to 15 years to life. Docket No. 1-2 at 9-10. In 2021, Ms. Andrade appeared before the Board of Parole Hearings and was found suitable for release on parole. Docket No. 1 at 10, ¶ 32. On December 3, 2021, Ms. Andrade was released directly into Immigration Customs and Enforcement ("ICE") custody. *Id.*; Docket No. 10 at 4.

On December 3, 2021, ICE conducted a custody review and determined that Ms. Andrade would be held without bond under 8 U.S.C. § 1226(c). Docket No. 10-1 at 2-3, ¶ 9. ICE issued a notice to appear charging her as removable from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii) because of her conviction for an aggravated felony. *Id.* at 3, ¶ 10. The Department of Homeland Security ("DHS") transferred Ms. Andrade to the Denver Contract Detention Facility in Aurora, Colorado ("Aurora Detention Facility"). Docket No. 1 at 10-11, ¶ 33.

---

[1] The following facts are taken from petitioner's petition for a writ of habeas corpus, Docket No. 1, respondents' response, Docket No. 10, and the declaration of Ritchie M. Sauceda, Jr. Docket No 10-1.

On December 20, 2021, Ms. Andrade appeared *pro se* before an immigration judge for a custody redetermination hearing.  Docket No. 10-1 at 4, ¶ 14.  The immigration judge denied Ms. Andrade's request for a custody redetermination because she was subject to mandatory detention under 8 U.S.C. § 1226(c).  *Id.*; Docket No. 1 at 11, ¶ 34.  Ms. Andrade had a second hearing on January 25, 2022.  Docket No. 1 at 11, ¶ 36.  At the hearing, an attorney from Centro Legal de la Raza raised concerns about Ms. Andrade's competency to represent herself.  *Id.*; Docket No. 10 at 4.  DHS provided the court with evidence on Ms. Andrade's mental health and moved for a hearing to determine competency.  Docket No. 1 at 11, ¶ 36.  On February 3, 2022, the immigration judge held a competency hearing and ruled that Ms. Andrade was competent to represent herself in removal proceedings.  *Id.*

On February 24, 2022, the immigration judge sustained the charge of removability against Ms. Andrade.  *Id*, ¶ 37.  At Ms. Andrade's request, the judge allowed Ms. Andrade an additional 15 days to file an application requesting protection under the Convention Against Torture ("CAT").  *Id.*; Docket No. 10 at 4; Docket No. 10-1 at 5, ¶ 20.  Ms. Andrade filed a CAT application on March 10, 2022.  Docket No. 1 at 11-12, ¶ 38.  Ms. Andrade requested two continuances of the hearing on her CAT application on April 11, 2022 and April 28, 2022.  Docket No. 10 at 4.  The hearing took place on June 15, 2022.  Docket No. 1 at 12, ¶ 39.  On July 12, 2022, Ms. Andrade's CAT application was denied.  *Id.*

In August 2022, Ms. Andrade appealed the denial of her CAT application.  *Id.* at 12-13, ¶ 40.  The Board of Immigration Appeals ("BIA") accepted her appeal.  *Id.*  Ms. Andrade requested an extension of time to brief her appeal.  *Id.*  In September 2022,

*pro bono* counsel entered an appearance on Ms. Andrade's behalf.  *Id.*  On October 2, 2022, Ms. Andrade submitted her appeal brief.  *Id.* at 12, ¶ 39.  DHS submitted a motion for summary affirmance on October 3, 2022.  *Id.*  On January 3, 2023, the BIA partially sustained Ms. Andrade's appeal and remanded her case, concluding that the immigration judge did not consider all the relevant evidence in her case.  *Id.*; Docket No. 10 at 4.  Ms. Andrade requested two continuances of the remanded CAT hearing on January 9, 2023 and January 23, 2023.  Docket No. 10 at 4.  The CAT hearing is scheduled for March 29, 2023.  Docket No. 1 at 13, ¶ 41.

Ms. Andrade has been in custody at the Aurora Detention Facility for over 14 months.  *Id.*, ¶ 42.  On March 2, 2023, Ms. Andrade filed a petition for a writ of habeas corpus ("habeas petition"), Docket No. 1, and a motion for a temporary restraining order ("TRO motion").  Docket No. 2.  Her habeas petition asks the Court to (1) assume jurisdiction over this matter; (2) enjoin the respondents from transferring Ms. Andrade to another detention facility while habeas proceedings are pending; (3) declare that Ms. Andrade's detention for fourteen months without the possibility of a bond hearing violates the Due Process Clause of the Fifth Amendment; (4) order respondents to release Ms. Andrade within five days unless they schedule a bond hearing before an immigration judge in which the government bears the burden of proof; and (5) award reasonable costs and attorneys' fees.  Docket No. 1 at 31.  Ms. Andrade's TRO motion asks the Court to order respondents to release her unless, within five days, respondents provide her with a constitutionally compliant bond hearing.  Docket No. 2 at 2.  Ms. Andrade's TRO motion argues that "her detention status irreparably harms her likelihood of success" at her March 29, 2023 hearing.  *Id.*  On March 3, 2023, the parties

jointly moved to set a consolidated briefing schedule wherein respondents would file a response to Ms. Andrade's motions by March 10, 2023, and Ms. Andrade would file a reply by March 15, 2023.  Docket No. 8 at 1.  The Court granted the motion.  Docket No. 9.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are met: (1) the applicant is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  *Id.*; *Maleng v. Cook,* 490 U.S. 488, 490 (1989).  The Court has subject matter jurisdiction under § 2241 because Ms. Andrade is in the custody of immigration officials in Aurora, Colorado and she asserts that her detention without a bond hearing violates the Fifth Amendment of the Constitution.  Docket No. 1 at 5-6, ¶¶ 13, 15.

"[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."  *Rumsfeld v. Padilla,* 542 U.S. 426, 443 (2004); *see also United States v. Scott,* 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined.").  Venue is proper because Ms. Andrade is in custody in Aurora, Colorado, which is within the geographical boundaries of the District of Colorado.

Ordinarily, petitioners are required to exhaust their administrative remedies prior to seeking a writ under § 2241.  *See Williams v. O'Brien,* 792 F.2d 986, 987 (10th Cir.

1986 (per curiam).  Respondents have not pursued the argument that Ms. Andrade's claims are barred because she failed to exhaust his administrative remedies.  Moreover, exhaustion of remedies is not required if exhaustion would be futile.  *Goodwin v. State of Okla.,* 923 F.2d 156, 157 (10th Cir. 1991).  Ms. Andrade is detained under 8 U.S.C. § 1226(c), which permits the government to detain certain individuals who are not citizens of the United States without a bond hearing during removal proceedings.  8 U.S.C. § 1226(c).  Ms. Andrade seeks an individualized hearing and bond determination on the basis that her detention without a bond hearing is so prolonged that it has become unconstitutional.  Docket No. 1 at 2-3, ¶ 3.  Immigration officials have previously ruled that they lack authority to hear constitutional challenges to statutes.  *Matter of R-A-V-P, Respondent*, 27 I. & N. Dec. 803, 804 n.2 (BIA 2020), *abrogated on other grounds by Hernandez-Lara v. Lyons,* 10 F.4th 19 (1st Cir. 2021).  Accordingly, the Court finds that any appeal by Ms. Andrade would have been futile, and the Court has jurisdiction to consider her habeas petition.

### III.  ANALYSIS

#### A.  Detention Under § 1226(c)

Ms. Andrade is being held in custody pursuant to 8 U.S.C. § 1226(c).  Docket No. 1 at 11, ¶ 34; Docket No. 10 at 3.  Section 1226(c) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 in an effort to prevent deportable aliens convicted of certain crimes from engaging in further criminal activity or failing to appear for removal hearings.  *Nielsen v. Preap*, 139 S. Ct. 954, 960 (2019).  The section is "a special rule for aliens who have committed certain dangerous crimes and those who have connections to terrorism," mandating that such individuals "must be

arrested 'when [they are] released' from custody on criminal charges and (with one narrow exception [ ]) must be detained without a bond hearing until the question of their removal is resolved." *Id.* at 959 (quoting 8 U.S.C. § 1226(c)).  The Supreme Court has held that it is constitutional to detain individuals pursuant to § 1226(c) without a bond hearing during removal proceedings.  *Demore v. Kim*, 538 U.S. 510, 531 (2003); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018).

In *Jennings*, the Supreme Court considered a Ninth Circuit decision holding that due process required that individuals detained pursuant to § 1226(c) be given a bond hearing every six months and that detention lasting longer than six months is impermissible unless the government proves that further detention is justified by clear and convincing evidence.  *Jennings*, 138 S. Ct. at 839.  The Supreme Court held that § 1226(c), on its face, does not require bond hearings every six months, but the Court did not address the question of whether prolonged detention without a bond hearing violates the due process clause.  *Id.* at 847-48, 851.

Several federal appellate courts have concluded that, at some point, prolonged detention under § 1226(c) without a bond hearing violates the Due Process Clause of the Fifth Amendment.  *See, e.g., German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 209 (3rd Cir. 2020) (holding that individuals detained under § 1226(c) may bring as-applied challenges to their detention based on its duration); *Reid v. Donelan,* 17 F. 4th 1, 7 (1st Cir. 2021) ("we adhere to the notion that the Due Process Clause imposes some form of reasonableness limitation upon the duration of detention" under § 1226(c) (citation and quotations omitted)).  However, the Tenth Circuit has yet to rule on this issue.

## B.  Due Process Analysis

Ms. Andrade claims that her detention without a bond hearing has become unconstitutionally prolonged.  Docket No. 1 at 21, ¶ 56.  To determine whether to grant the relief that Ms. Andrade requests and to order respondents to hold a bond hearing, the Court will analyze six factors to determine whether her detention violates the Due Process Clause: (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.  *See Daley v. Choate,* 22-cv-03043-RM, 2023 WL 2336052, at *3 (D. Colo. Jan. 6, 2023); *see also German Santos,* 965 F.3d at 212 (applying a four-factor balancing test that considered duration of detention, likelihood of continued detention, reasons for delay, and conditions of confinement to determine whether to order respondents to hold a bond hearing).

Ms. Andrade does not dispute that she is removable from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii) because she was convicted of an aggravated felony or that she is statutorily ineligible for a bond hearing because of the conviction.  Docket No. 1 at 10-11, 15, ¶¶ 33-34, 46.  Under *Demore,* respondents are not required to hold a bond hearing for her during removal proceedings.  538 U.S. at 531.  Ms. Andrade nevertheless argues that her detention violates the Due Process Clause because she has been held for over fourteen months without a bond hearing.  Docket No. 1 at 21, ¶ 56.  The Court agrees that the duration of her detention—over fourteen months—implicates the Due Process Clause.  *See Reid*, 17 F. 4th at 4 (considering a fourteen-

month detention); *Daley*, 2023 WL 2336052, at *3 (finding that detention for over fourteen months implicated the due process clause); *Muse v. Sessions*, 409 F. Supp. 3d 707, 716 (D. Minn. 2018) (same); *Portillo v. Hott*, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018) (same).

### 1. Total Length of Detention to Date

Ms. Andrade was transferred to the Aurora Detention Facility on December 3, 2021.  Docket No 1 at 10-11, ¶ 33.  At the time Ms. Andrade filed her habeas petition, she had been detained for 454 days or nearly fifteen months.  *Id.* at 21, ¶ 57.  Courts have held that this factor weighs in favor of petitioners who have been detained for a similar length of time.  *See Daley*, 2023 WL 2336052, at *3 (finding detention for 430 days weighed in favor of petitioner); *Perez v. Decker*, 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) (finding that a detention for more than nine months weighed in favor of petitioner); *Muse*, 409 F. Supp. 3d at 716 (finding that detention for over fourteen months weighed in favor of petitioner); *Portillo*, 322 F. Supp. 3d at 707 (same). Accordingly, the Court finds that the total length of detention to date weighs in Ms. Andrade's favor.

### 2. Likely Duration of Future Detention

Ms. Andrade is scheduled for a CAT hearing before an immigration judge on March 29, 2023.  Docket No. 1 at 13, ¶ 41.  Ms. Andrade argues that her continued detention is "likely to be protracted" regardless of the outcome of the hearing because the losing party is likely to appeal the decision.  *Id.* at 22, ¶ 58.  Delay in these circumstances weighs in favor of petitioners engaged in or soon to be engaged in appeals processes.  *See Viruel Arias v. Choate*, No. 22-cv-02238-CNS, 2022 WL

9

4467245, at *2 (D. Colo. Sep. 26, 2022) ("where either party may appeal an immigration court's decision this factor weighs in favor of the petitioner"); *see also German Santos*, 965 F.3d at 212 (finding that an appeals process that "would add months more in prison" weighed in favor of petitioner when considering the likelihood of his continued detention).  Accordingly, this factor weighs in Ms. Andrade's favor.

### 3.  Conditions of Detention

Ms. Andrade argues that the conditions of her detention at the Aurora Detention Facility weigh in her favor.  Docket No. 1 at 22-23, ¶¶ 59-60.  Respondents do not dispute this conclusion, conceding that "[c]ourts have concluded that the detention facility where Ms. Andrade is detained is enough like a corrections facility for this factor to favor detainees."  Docket No. 10 at 11 (citing *Daley*, 2023 WL 2336052, at *4).  Accordingly, the Court finds that this factor weighs in Ms. Andrade's favor.

### 4. and 5.  Delays in the Removal Proceedings Caused by the Detainee and the Government

The duration of Ms. Andrade's detention was lengthened by her choice to appeal the initial denial of her CAT application and by the continuances and extensions she requested.  Docket No. 10 at 4.  However, the Court will not hold her efforts to seek relief through the available legal channels against her.  *See German Santos*, 965 F.3d at 212 ("we will not hold [petitioner's] appeals and applications for discretionary relief against him") (citing *Chavez-Alvarez v. Warden York County Prison*, 783 F. 3d 469, 476-77 (3rd Cir. 2005)).  Ms. Andrade argues that respondents are responsible for delays in the proceedings because DHS failed to "timely provide" the immigration court with records of Ms. Andrade's potential incompetence and because of the length of time it took to issue a decision in her CAT application and appeal.  Docket No. 1 at 25-26,

¶¶ 63-64.  However, there is no suggestion that respondents acted with carelessness or bad faith.  *See German Santos*, 965 F.3d at 212 ("[a]bsent carelessness or bad faith, we will not scrutinize the merits of immigration proceedings and blame whichever party has the weaker hand").  Accordingly, the Court finds that the fourth and fifth factors are neutral.

### *6. The Likelihood that the Removal Proceedings will Result in a Final Order of Removal*

Ms. Andrade argues that this factor weighs in her favor because she "has a strong claim for relief on remand from the BIA."  Docket No. 1 at 26, ¶ 65.  On Ms. Andrade's appeal from the immigration judge's denial of her CAT application, the BIA found that the immigration judge failed to consider all of the relevant evidence supporting her claim that she faces the risk of torture if she were to return to Mexico and failed to "clearly aggregate" the risk of torture from all sources.  Docket No. 1-2 at 39-40.

However, respondents point out that Ms. Andrade must demonstrate that she is likely to be tortured at the instigation of or with the consent of a public official in order to qualify for CAT protection.  Docket No. 10 at 11 (citing 8 C.F.R. § 1208.18(a)(1)).  The Tenth Circuit has held that an individual is not entitled to CAT protection where the threat of torture is the result of a "private vendetta" against him and he has not demonstrated that a public official is, at a minimum, willfully blind to the threat.  *Cruz-Funez v. Gonzales,* 406 F.3d 1187, 1192 (10th Cir. 2005) (citing *Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003) and *Ontunez-Tursios v. Ashcroft,* 303 F.3d 341, 354 (5th Cir. 2002)); *see also Karki v. Holder,* 715 F.3d 792, 807 (10th Cir. 2013) (holding that a petitioner would meet the willful blindness standard if he could show that "the government would likely turn a blind eye to his torture") (citations omitted).  Moreover,

11

the Tenth Circuit has declined to review an immigration judge's decision to deny a CAT application based on the immigration judge's finding that the petitioner "could relocate to another part of Mexico where he would not likely be tortured."  *Hernandez v. Garland*, 2022 WL 16641049, at *2 (10th Cir. Nov. 3, 2022) (unpublished).  Ms. Andrade has failed to show how she will be able to overcome these barriers and prove her eligibility for CAT protection.  This factor weighs against Ms. Andrade.

Factors one, two, and three weigh in favor of Ms. Andrade; factors four and five are neutral; and factor six weighs against her.  When considered together, the factors favor Ms. Andrade.  Accordingly, the Court finds that Ms. Andrade's detention for over fourteen months without a bond hearing violates her Due Process rights under the Fifth Amendment.

### C.  Bond Hearing

Ms. Andrade argues that, to satisfy due process, "the government must bear the burden of proof by clear and convincing evidence to justify continued detention" at her bond hearing.  Docket No 1 at 27, ¶ 67.  However, "[d]ue process is not a one size fits all proposition."  *Miranda v. Garland*, 34 F.4th 338, 359 (4th Cir. 2022).  The Supreme Court has ruled that Congress may make rules that would be "unacceptable if applied to citizens" in the immigration context because of Congress's broad authority over the immigration and naturalization process.  *Demore,* 538 U.S. at 521 (quotation and citation omitted).  Although the Supreme Court has contemplated that placing the burden of proof on a petitioner who is not a citizen of the U.S. may pose a constitutional problem where that person is facing potentially indefinite and permanent detention, *Zadvydas v. Davis*, 533 U.S. 678, 692 (2001), it has noted that detention during removal

proceedings under § 1226(c) has a definite end point.  *Demore*, 538 U.S. at 527-28; *see also Miranda*, 34 F.4th at 360-61; *cf. Basari v. Barr,* 469 F. Supp. 3d 1063, 1074 (D. Colo. 2020) (regarding detention pursuant to § 1226(a), "the Fifth Amendment clearly does not require the government to bear the burden of proof in bond proceedings").

Furthermore, the Supreme Court in *Demore* held that it is constitutionally permissible for the government to detain individuals under § 1226(c) without a bond hearing.  *Demore,* 538 U.S. at 531.  Even Justice Kennedy's concurrence in *Demore*, in which he concluded that due process required individualized bond hearings, does not suggest that the burden of proof at a bond hearing should be placed on the government.  *Id.* at 532 ("the permissibility of continued detention pending deportation proceedings turns solely on the alien's ability to satisfy the ordinary bond procedures").  Accordingly, the Court will not place the burden of proof on the government at Ms. Andrade's bond hearing.  Rather Ms. Andrade will bear the burden of proof that she is not a flight risk or a danger to the community.

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that petitioner Marisela Andrade de Zarate's petition for a writ of habeas corpus [Docket No. 1] is **GRANTED in part** and **DENIED** in part.  It is further

**ORDERED** that respondents shall hold an individualized bond hearing before an impartial immigration judge within ten days to determine whether Ms. Andrade should be released on conditions.[2]  It is further

---

[2] Ms. Andrade's motion for a TRO asks the Court to order respondents to provide her with a bond hearing within five days of the Court's order to improve her chances of success at her March 29, 2023 hearing.  Docket No. 2 at 2.  However, her habeas

**ORDERED** that, pursuant to D.C.COLO.LCivR 7.1(d), which requires that motions be filed as separate documents, and D.C.COLO.LCivR 54.3, which requires that a motion for attorney fees be supported by an affidavit, Ms. Andrade's request for attorney fees is **DENIED** without prejudice and Petitioner may choose to file a motion for attorney fees that complies with the applicable rules.  It is further

**ORDERED** that Ms. Andrade's motion for a temporary restraining order [Docket No. 2] is **DENIED** as moot.  It is further

**ORDERED** that the case is closed.

DATED March 20, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

petition requests only that the Court order respondents to schedule such a hearing. Docket No. 1 at 3, ¶ 5.  Furthermore, per the parties' joint consolidated briefing schedule, the briefing for this matter was not complete until March 15, 2023.  Docket No. 8 at 1.  Ms. Andrade has not demonstrated why requiring a respondents to hold a bond hearing this close to the date of her March 29, 2023 CAT hearing would make a meaningful difference to her ability to prepare for the hearing, especially given that she is now represented by counsel.